| UNITED STATES DISTRICT COURT | EASTERN DISTRICT OF TEXAS |
|---|---|

| UNITED STATES OF AMERICA | § | |
|---|---|---|
| | § | |
| *versus* | § | CASE NO. 1:07-cr-00236-MAC-CLS-1 |
| | § | |
| ROBERT EARL WILSON | § | |

## MEMORANDUM AND ORDER

Pending before the court is Defendant Robert Wilson's ("Wilson") *pro se* Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A) (#202). The Government filed a response in opposition (#206). Wilson filed a reply (#210). After conducting an investigation, Probation recommends denying the motion. Having considered the submissions of the parties, the record, and the applicable law, the court is of the opinion that the motion should be denied.

I.  <u>Background</u>

A recap of the procedural history in this case is necessary to understand the basis of the pending motion. On December 19, 2007, Wilson was named in Count 1 of a four-count Indictment by a grand jury sitting in the Eastern District of Texas, Beaumont Division (#14). Count 1 charged Wilson with being a Felon in Possession of a Firearm in violation of 18 U.S.C. § 922(g)(1). On January 23, 2008, the grand jury returned a nine-count Superseding Indictment (#26). The first four counts remained the same as the original Indictment. Count 5 charged Wilson and two co-defendants with Conspiracy to Possess with Intent to Distribute 50 Grams or More of Cocaine Base in violation of 21 U.S.C. § 846. Count 6 charged the defendants with Attempting to Possess with Intent to Distribute 50 Grams or More of Cocaine Base in violation of 21 U.S.C. § 846. Count 7 charged Wilson with Possession of a Firearm in Furtherance of a Drug Trafficking Crime in violation of 18 U.S.C. § 924(c).

On August 14, 2008, Wilson entered a plea of guilty to Count 1 of the Superseding Indictment pursuant to an 11(c)(1)(C) plea agreement (#103). On March 30, 2009, Wilson was sentenced to 240 months' imprisonment pursuant to the plea agreement (#133). The remaining counts were dismissed on the Government's motion in accordance with the terms of the plea agreement. On April 8, 2009, the Judgment was docketed (#146). Wilson's conviction became final on April 22, 2010, one year after the day he could have filed a notice of appeal.[1]

In his original motion to vacate, set aside, or correct sentence filed on August 16, 2013, Wilson argued he was deprived of due process and effective assistance of counsel as he was incorrectly sentenced under the Armed Career Criminal Act ("ACCA"). *Wilson v. United States*, 1:13-CV-520 (#1). Specifically, Wilson claimed his counsel was ineffective for failing to object to the ACCA designation which he alleges was predicated on a conviction for walkaway escape. Wilson argued under *Chambers v. United States*, 555 U.S. 122 (2009), walkaway escape no longer qualified under the residual clause of the ACCA's definition of a violent felony. Wilson further argued that *Chambers* was retroactively applicable and entitled him to re-sentencing without the ACCA designation. On December 22, 2015, former United States Magistrate Judge Keith F. Giblin entered a Report and Recommendation, recommending dismissing the motion to vacate, set aside, or correct sentence with prejudice as time-barred (#7).[2]

---

[1] Wilson did not file an appeal.

[2] The Magistrate Judge determined that the motion to vacate was untimely under 28 U.S.C. § 2255(f)(1) because almost three years elapsed from the time Wilson's conviction became final until he filed the above-referenced motion to vacate. Alternatively, the Magistrate Judge found the claims were barred under 28 U.S.C. § 2255(f)(3) because the *Chambers* decision was rendered in 2009 and Wilson waited almost four years to file the motion to vacate. Pursuant to *United States v. Bradford*, 660 F.3d 226 (5th Cir. 2001), the Magistrate Judge also found that *Chambers* should not be given retroactive effect to cases on collateral review.

On February 6, 2016, Wilson filed Objections to the Report and Recommendation (#12). Wilson than filed a Supplement to his motion to vacate, re-characterizing his claim under *Chambers* as a *Johnson* claim (#13).[3]  In both motions, Wilson requested the court change the sentence he received pursuant to the 11(c)(1)(C) plea agreement.  Senior District Judge Ron Clark overruled Wilson's objections, specifically finding that because Wilson's sentence under the 11(c)(1)(C) plea agreement was not established by, based upon, or within the subject offense Guideline range, it was not eligible for review, and Wilson's objections were meritless (#20). Judge Clark also denied Wilson a certificate of appealability.  Wilson never filed an appeal.

In his habeas proceeding, Wilson filed a Motion for Modification of Sentencing in light of the United States Supreme Court decision in *Hughes v. United States*, 584 U.S. 675 (2018), on June 6, 2022 (#27).  Wilson argued that in light of *Hughes*, he is now eligible for a sentence reduction even though he was sentenced under an 11(c)(1)(C) plea agreement.  In *Hughes*, the Supreme Court evaluated the impact of an 11(c)(1)(C) agreement on a request for reduction of sentence under 18 U.S.C. § 3582.  584 U.S. at 685-86.  The Supreme Court held that "a sentence imposed pursuant to a Type-C agreement is 'based on' the defendant's Guidelines range so long as that range was part of the framework the district court relied on in imposing the sentence or accepting the agreement," and that the district court had "discretion to decide whether to reduce Hughes' sentence after considering the § 3553(a) factors and the Commission's relevant policy statement." *Id*. at 685, 688.  United States District Judge Michael J. Truncale determined that in

---

[3] On June 26, 2015, the Supreme Court of the United States held that imposing an increased sentence under the residual clause of the ACCA violates the constitutional guarantee of due process. *Johnson v. United States*, 576 U.S. 591, 597-98 (2015).  On April 18, 2016, the Supreme Court held that *Johnson* applied retroactively to ACCA cases on collateral review.  *Welch v. United States*, 578 U.S. 120, 135 (2016).

citing *Hughes*, which relies on a specific statutory provision that authorizes limited discretionary sentence reductions, Wilson failed to raise a cognizable claim for habeas relief in his § 2255 motion (#31).  Judge Truncale advised that any such motion under 18 U.S.C. § 3582 should be filed directly in the sentencing court.[4]

Wilson's present motion for compassionate release followed in his criminal case wherein he contends that extraordinary and compelling reasons justify his compassionate release. Specifically, Wilson asserts that an unwarranted sentencing disparity and his parents' failing health constitute extraordinary and compelling reasons to grant him compassionate release.[5]  Wilson is currently incarcerated at United States Penitentiary Canaan in Waymart, Pennsylvania ("USP Canaan"), with a projected release date of August 20, 2027.[6]

II.   Analysis

A.   Controlling Law

A judgment of conviction that imposes a sentence of imprisonment is a "'final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United*

---

[4] Judge Truncale also denied a separate Federal Rule of Civil Procedure 60(b) motion as it pertained to Wilson's claims under his motion to vacate, set aside, or correct sentence.

[5] In his reply to the Government's response, Wilson states he is not arguing that non-retroactive changes in the law constitute "extraordinary and compelling" reasons for compassionate release but that there is a gross disparity between his sentence and a likely sentence for identical criminal conduct today without the ACCA enhancement.

[6] Wilson filed a *pro se* Motion to Reduce Sentence Pursuant to the 2023 United States Sentencing Commission Amendment and a Motion to Appoint Counsel on June 12, 2023 (#204).  On September 5, 2023, Wilson filed another *pro se* Motion to Reduce Sentence Based on Changes in the Sentencing Guidelines under Criminal History Enhancement 2023 United States Sentencing Commission Amendment and another Motion to Appoint Counsel (#208).  On November 13, 2023, Magistrate Judge Christine Stetson appointed counsel to represent Wilson with respect to these motions and denied the motions, subject to refiling by counsel (#212).  These claims are considered to be separate from the pending motion and are not under consideration in this Motion for Compassionate Release.

*States*, 560 U.S. 817, 824 (2010) (quoting 18 U.S.C. § 3582(b)); *see* 18 U.S.C. § 3582(c).  Often referred to as "compassionate release," § 3582(c)(1)(A) embodies a rare exception to a conviction's finality.  This statute gives the court discretion, in certain circumstances, to reduce a defendant's term of imprisonment.  The First Step Act of 2018 ("Act"), Pub. L. No. 115-391, 132 Stat. 5194, in part, amended 18 U.S.C. § 3582(c)(1)(A), currently provides:

> (A) the court, upon motion of the Director of the Bureau of Prisons [("BOP")], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a)[7] to the extent that they are applicable, if it finds that—

> (i) extraordinary and compelling reasons warrant such a reduction; or

> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

---

[7] Section 3553(a) directs courts to consider:  the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") provisions and policy statements; any pertinent policy statement of the United States Sentencing Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim. 18 U.S.C. § 3553(a).

18 U.S.C. § 3582(c)(1)(A).  This provision is commonly referred to as "compassionate release."

*See, e.g.*, *United States v. Escajeda*, 58 F.4th 184, 186 (5th Cir. 2023) ("We often refer to this as 'compassionate release' because courts generally use it for prisoners with severe medical exigencies or infirmities.").

Rather than define "extraordinary and compelling reasons," Congress elected to delegate its authority to the United States Sentencing Commission ("Commission").  *See* 28 U.S.C. § 994(t) (directing the Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"); *United States v. Jean*, 108 F.4th 275, 278 (5th Cir. 2024); *United States v. Jackson*, 27 F.4th 1088, 1090 (5th Cir. 2022); *United States v. Cooper*, 996 F.3d 283, 287 (5th Cir. 2021); *United States v. Shkambi*, 993 F.3d 388, 392 (5th Cir. 2021).  Although the Commission issued a policy statement prior to the passage of the Act that described the reasons that qualify as extraordinary and compelling, that policy statement referenced only those motions filed by the Director of the BOP—thus, the United States Court of Appeals for the Fifth Circuit and other courts held that it was inapplicable to motions filed by defendants on their own behalf.  *See Jackson*, 27 F.4th at 1090; *Cooper*, 996 F.3d at 287-88; *Shkambi*, 993 F.3d at 392.

Effective November 1, 2023, the Commission—responding to, among other things, the Act—amended the Guidelines to extend the applicability of the policy statement set forth in U.S.S.G. § 1B1.13 to defendant-filed motions and to broaden the scope of what qualifies as "extraordinary and compelling" reasons potentially warranting compassionate release.  *See* U.S.S.G. § 1B1.13.  Section 1B1.13(b), as amended, identifies six categories of circumstances that may qualify as "extraordinary and compelling."  *Id*. § 1B1.13(b).  These categories are:

(1) the medical circumstances of the defendant; (2) the age of the defendant; (3) the family circumstances of the defendant; (4) whether the defendant was a victim of abuse while in custody; (5) other reasons similar in gravity to those previously described; and (6) an unusually long sentence.  *Id*. § 1B1.13(b)(1)-(6).

As a result, a prisoner seeking compassionate release on his own motion must satisfy the following hurdles. The defendant must have exhausted his administrative remedies; "extraordinary and compelling reasons" must justify the reduction of his sentence or he must satisfy the requirements of § 3582(c)(1)(A)(ii); the reduction must be consistent with the Commission's applicable policy statements; and the defendant must convince the court to exercise its discretion to grant the motion after considering the § 3553(a) factors.  *See Jackson*, 27 F.4th at 1089; *Shkambi*, 993 F.3d at 392; *accord United States v. Rollins*, 53 F.4th 353, 358 (5th Cir. 2022).

B.    Exhaustion of Administrative Remedies

Section 3582(c)(1)(A)'s plain language makes it clear that the court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement. 18 U.S.C. § 3582(c)(1)(A); *United States v. Garrett*, 15 F.4th 335, 337 (5th Cir. 2021) ("[T]o file a proper motion for compassionate release in the district court, a prisoner must first exhaust the available administrative avenues."); *United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020) (holding that the statutory requirement that a defendant file a request with the BOP before filing a motion for compassionate release in federal court "is *not* jurisdictional but that it *is* mandatory").  The exhaustion requirement applies whether the motion is styled as one for compassionate release or merely for a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A).  Accordingly, before seeking relief from the court, a defendant must first

submit a request to the warden of his facility to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request.  18 U.S.C. § 3582(c)(1)(A); *Garrett*, 15 F.4th at 338 ("[A]n inmate has two routes by which he may exhaust his administrative remedies.  Both begin with 'requesting that the [BOP] bring a motion on the defendant's behalf.'" (quoting *Franco*, 973 F.3d at 467)).

Here, the Government concedes Wilson exhausted his administrative remedies.  While the court has not been provided a copy of the exhaustion letter Wilson submitted to the Warden, the Government states in its Response that Wilson submitted a letter to the Warden on September 4, 2020, and it was denied by the Warden on October 14, 2020.  Even if there is some question as to proper exhaustion, the Government does not invoke § 3582(c)(1)(A)'s exhaustion requirement as a basis for denying relief and, thus, has waived any nonjurisdictional, procedural filing requirement.  *See United States v. McClean*, Nos. 21-40015 & 21-40017, 2022 WL 44618, at *1 (5th Cir. Jan. 5, 2022) (holding that it is an abuse of discretion for the district court to deny a motion for compassionate release based on a purported failure to comply with § 3582(c)(1)(A)'s exhaustion requirement when the Government did not raise exhaustion).  Although Wilson appears to have complied with the exhaustion requirement before filing his motion for compassionate release, nothing in the motion indicates that extraordinary and compelling reasons exist to reduce his sentence.

C.    Criteria for Release

1.    Family Circumstances

Wilson contends that his family circumstances present extraordinary and compelling reasons that justify compassionate release.  Wilson argues essentially that he is the only caretaker

available to his ailing parents.  With respect to a defendant's family circumstances, § 1B1.13(b)(3) provides that extraordinary and compelling reasons exist under any of the following circumstances or a combination thereof:

> (A)  The death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition.
>
> (B)  The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (C)  The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent.
>
> (D)  The defendant establishes that circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver for such family member or individual.   For purposes of this provision, "*immediate family member*" refers to any of the individuals listed in paragraphs (3)(A) through (3)(C) as well as a grandchild, grandparent, or sibling of the defendant.

U.S.S.G. § 1B1.13(b)(3).

In the context of § 1B1.13(b)(3), one is incapacitated, whether due to injury or illness, when he or she is "deprive[d] of capacity or natural power," such that he or she is unable to provide self-care.  *See Incapacitate*, MERRIAM-WEBSTER.COM, https://www.merriam-webster. com/dictionary/incapacitate; *see also United States v. Bautista*, No. 3:15-cr-02720-DMS, 2024 WL 3014637, at *3 (S.D. Cal. June 14, 2024) ("Generally, a person is incapacitated when he is 'completely disabled' and cannot care for himself.").  Moreover, "[f]or guidance on what constitutes 'incapacitation,' courts have looked to the [BOP's] guidelines for handling inmate

compassionate release requests." *United States v. Al Hunaity*, No. CR 18-723 (RBK), 2024 WL 982044, at *5 (D.N.J. Mar. 7, 2024); *see United States v. Watson*, No. 4:18-CR-40018-KES-1, 2024 WL 1093757, at *2 (D.S.D. Mar. 13, 2024) ("[C]ourts have relied on the BOP program statement in determining that 'incapacitation' requires that the family member have suffered a severe injury or illness, leaving them incapable of acting as a caregiver."). "'Incapacitation' is defined as 'a serious injury, or a debilitating physical illness and the result of the injury or illness is that the [individual] . . . is completely disabled, meaning that the [individual] . . . cannot carry on any self-care and is totally confined to a bed or chair.'" *United States v. Collins*, No. 15-10188-EFM, 2020 WL 136859, at *4 (D. Kan. Jan. 13, 2020) (quoting U.S. DEP'T OF JUST., FED. BUREAU OF PRISONS, PROGRAM STATEMENT 5050.50 (Jan. 17, 2019)); *see United States v. Crider*, No. 6:14-cr-00044-GFVT-HAI-1, 2024 WL 1291492, at *2 n.1 (E.D. Ky. Mar. 26, 2024); *United States v. White*, No. CR16-40, 2021 WL 1721016, at *4 (E.D. La. Apr. 30, 2021).

Here, Wilson asserts he is the only caregiver for his ailing parents as his only sibling, his sister, died approximately nine years ago from complications with lupus. Wilson's claim of his parents' incapacitation, however, is conclusory. First, he merely attaches letters from both his father and mother who vaguely state they are in declining health. There is no reference or discussion as to any specific medical condition or disability from which either suffers. Furthermore, while Wilson claims he is the only available caretaker for his parents due to his sister's untimely death, he does not explain how his parents have been able to take care of themselves for the last nine years since her death.[8]

---

[8] At the time the Presentence Investigation Report ("PSR") was prepared in March 2009, Wilson informed Probation that his parents were divorced in 1995.

Absent from Wilson's documentation is any indication that his parents are truly incapacitated such that they suffer from a serious injury or debilitating physical illness that renders them completely disabled or from a severe cognitive deficit.[9]  *See United States v. Romano*, 707 F. Supp. 3d 233, 237 (E.D.N.Y. 2023) (the defendant's *"failure to attach any medical evidence or opinions (or similarly competent evidence)"* rendered *"the Court unable to make the necessary factual findings");  United States v. Ahmed*, 19 Cr. 603-1 (KPF), 2024 WL 2925112, at *5 (S.D.N.Y. June 10, 2024) (denying compassionate release where the defendant "submitted no substantiation of his wife's medical issues").  Such conclusory assertions do not allow the court to make the necessary factual findings concerning the incapacity of Wilson's parents.  *See United States v. Duprey*, No. CR10-00101(RK), 2024 WL 3873938, at*2 (D.N.J. Aug. 19, 2024) ("Defendant has put forth little evidence that [his 84-year-old mother] suffers from an incapacitating medical condition requiring Defendant's care" and "[t]herefore has not met his burden to show [his mother's incapacitation." (citing *United States v. Yarbrough*, No. 2:06-CR-00203-1, 2023 WL 8614050, at *3 (W.D. Pa. Dec. 13, 2023))).

Moreover, Wilson has not demonstrated that he is the only available caregiver for his parents.  The record reflects that either Wilson's parents have been able to take care of themselves for the last nine years or someone else has been assisting them in their care due to Wilson's

---

[9] Neither the Government nor Probation provided any information regarding Wilson's parents or family in response to his Motion for Compassionate Release.  While the court notes that Probation reported in the PSR that Wilson's father was disabled from a back injury, this was information provided by Wilson during an interview.  There is no supporting documentation accompanying the PSR, and Wilson, here, provides none.  Probation also noted in the PSR that Wilson did not provide a telephone number for his parents or sister and the personal and family data could not be verified.

sister's death.[10] *See United States v. Lopez*, No. 23-50404, 2024 WL 244935, at *1 (5th Cir. Jan. 23, 2024) (noting that the defendant "failed to explain why his other siblings could not care for his parents"); *United States v. Garcia*, No. H-21-162-01, 2024 WL 2114311, at *2 (S.D. Tex. May 10, 2024) (stating that the defendant failed to "establish that his mother has no other family members, such as brothers or sisters, who can assist with her care" and explaining that the defendant's "conclusory assertion that his wife is unavailable as a caregiver [did] not meet his burden of proof"); *United States v. Watson*, No. 4:18-CR-40018-KES-1, 2024 WL 1093757, at *3 (D.S.D. Mar. 13, 2024) ("Without evidence that [the defendant] is the only available caregiver, the court cannot determine whether [the defendant]'s family circumstances give rise to 'extraordinary and compelling reasons' for her release."); *United States v. Wrice*, No. 10-cr-40065-JPG-1, 2023 WL 4030067, at *3 (S.D. Ill. June 15, 2023) (reasoning that the defendant had not "met her burden under the proposed amendments" where she "provide[d] no statements from other family members, no affidavits or letters from medical professionals, and no other verifiable evidence to show that she is the only caretaker available or that [her] stepfather requires a caretaker"). According to Wilson's PSR, Wilson had a 15-year-old daughter and a 14-year-old son in 2009 who appear to be potential caregivers for their grandparents. Given the passage of time, they should be approximately 30 and 29 years old at this time and fully capable to assist in the care of their grandparents. Furthermore, based on the letters provided by Wilson's parents, it appears they both have relationships with their grandchildren. On the present record,

---

[10] Wilson's father mentions an adult grandson who is employed as a high school counselor who appears to be a possible caregiver. It is unclear if he has taken care of Wilson's parents in the past. Wilson's mother mentions a grandson, a granddaughter, and great-grandchildren in her letter who also appear to be potential caregivers.

Wilson provides the court with no evidence suggesting that his other family members are incapable of caring for his parents. Thus, Wilson cannot establish that he is their only available caregiver.

*See Yarbrough*, 2023 WL 8614050, at *3 (given the defendant's close family group, the court found that the defendant was not the only person who could serve as his mother's caregiver, and "there was no testimony that obviated the facial availability of other family members as potential viable caregivers").

In any event, Wilson has failed to show that he would be a suitable caretaker for his parents if he were released. As explained below, Wilson has a lengthy history of drug and alcohol abuse and an extensive criminal history. Habits such as these are easy to fall back into absent successful rehabilitation. Unfortunately, it is clear from Wilson's disciplinary record that he has not been rehabilitated. Furthermore, according to the PSR, despite being physically able and having marketable skills, Wilson has not been employed since 2000 and instead supported himself by selling drugs.[11] In view of these circumstances, the court concludes that Wilson's purported need to care for his parents fails to constitute an extraordinary and compelling reason warranting compassionate release.

2.      Unusually Long Sentence

Wilson next contends that he should be released because there is a gross disparity between his sentence and a likely sentence for identical criminal conduct today without the ACCA enhancement. Section 1B1.13(b)(6) provides:

---

[11] The PSR reflects Wilson reported to Probation that his only employment history consists of two weeks at International House of Pancakes in Beaumont, Texas, during 1992, and one month at Widgeon Construction and Brand Scaffolding during 2000 while he was in a halfway house.

> If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G. § 1B1.13(b)(6).

Wilson has served fifteen years of his twenty year sentence pursuant to the 11(c)(1)(C) agreement.  Probation confirms that if Wilson were sentenced today, the ACCA enhancement would not apply as walkaway escape no longer qualifies as a violent offense under *Chambers*, and his statutory maximum sentence for Count 1 would be 120 months, half the 240 month sentence to which he agreed.[12]  Whether this court can consider non-retroactive changes in the law as extraordinary and compelling reasons for a reduction in sentence appears to be unsettled in the

---

[12] What Wilson fails to consider is how beneficial the plea agreement was to him, regardless of any post-conviction changes in the law.  In exchange for the plea agreement, the  Government agreed to drop Counts 5, 6, and 7, some of which carried higher statutory sentencing ranges.  Count 5 charged Wilson with Conspiracy to Possess with Intent to Distribute 50 grams or more of Cocaine Base in violation of 21 U.S.C. § 846, with a statutory penalty of a minimum of 10 years but not more than life imprisonment. Count 6 charged Wilson with Attempting to Possess with Intent to Distribute 50 Grams or More of Cocaine Base in violation of 21 U.S.C. § 846, also with a statutory penalty of a minimum of 10 years but not more than life imprisonment.  Count 7 charged Wilson with Possession of a Firearm in Furtherance of a Drug Trafficking Crime in violation of 18 U.S.C. § 924(c), with a statutory penalty of a minimum of 5 years which must be served consecutively to any other term of imprisonment.  Without the enhancement, and Wilson's criminal history, it is likely that the Government would not have agreed to a 120-month sentence on Count 1 only.  Wilson's exposure, discounting the ACCA enhancement, on all counts would have been 346 - 411 months, as compared to 360 months to life under the 11(c)(1)(C) plea agreement.  The 240-month sentence he received at the time was substantially lower than the minimum under either scenario.

Fifth Circuit.[13]   Regardless, the court finds that Wilson's individualized circumstances, as discussed below, do not warrant compassionate release.

3.   Rehabilitation

Wilson  maintains that his post-sentence rehabilitation, evidenced by the courses he has taken, the programs he has completed, and his strong family ties, establish extraordinary and compelling reasons for compassionate release.  Regarding rehabilitation of the defendant, the amended policy statement recognizes:  "Pursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement."  U.S.S.G. § 1B1.13(d); *accord United States v. Martinez*, No. 23-50418, 2024 WL 658952, at *1 (5th Cir. Feb. 16, 2024) ("Even if [the defendant] were reformed, his rehabilitation efforts alone are not an extraordinary and compelling reason for release."); *United States v. Handlon*, No. 23-50386, 2024 WL 111787, at *1 (5th Cir. Jan. 10, 2024) (holding that the defendant's "rehabilitation efforts alone are not an extraordinary and compelling reason for his release").  Nonetheless, the amendments add a proviso that states:  "However, rehabilitation of the defendant while serving the sentence may be considered in combination with other

---

[13] *See United States v. Jean*, 108 F.4th 275 (5th Cir. 2024), *pet. for reh'g filed* (Sept. 18, 2024) (finding non-retroactive changes in the law, when combined with extraordinary rehabilitation, could amount to extraordinary and compelling reasons warranting compassionate release); *cf. United States v. Escajeda*, 58 F.4th 184, 186 (5th Cir. 2023) (holding "extraordinary and compelling reasons" encompass only that which is "unique to the life of the prisoner"); *United States v. McMaryion*, No. 21-50450, 2023 WL 4118015, at *2 (5th Cir. June 22, 2023) ("A prisoner may not leverage non-retroactive changes in criminal law to support a compassionate release motion, because such changes are not extraordinary nor compelling," relying on *Escajeda*); *see also United States v. Elam*, No. 22-40373, 2023 WL 6518115 (5th Cir. Oct. 5, 2023) (relying on *McMaryion* in finding the court did not abuse its discretion by concluding non-retroactive changes in the law did not count as "extraordinary and compelling"); *United States v. Cardenas*, No. 19-40425, 2024 WL 615542 (5th Cir. Feb. 14, 2024) (relying on *Elam* and *McMaryion*, finding the district court did not abuse its discretion in concluding that non-retroactive changes did not count as "extraordinary and compelling").

circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted." U.S.S.G. § 1B1.13(d).

Here, the court is unconvinced of Wilson's rehabilitation, particularly in light of the significant disciplinary record he has accrued while incarcerated.  According to Wilson's disciplinary history, he has committed almost thirty disciplinary infractions since his most recent imprisonment began.  These include possessing a dangerous weapon (3x), phone abuse/disrupt monitoring (5x), introduction of drugs/alcohol (2x), disruptive conduct (high), refusing to obey an order (2x), possessing an unauthorized item (2x), phone abuse/criminal, assaulting without serious injury, being in an unauthorized area, use of drugs/alcohol (3x), possessing drugs/alcohol (2x), disruptive conduct (greatest), using phone or mail without authorization (5x), and being insolent to a staff member.  Notably, on October 17, 2023, while his motion for compassionate release was pending, Wilson was disciplined for possessing a dangerous weapon and lost 41 days of good conduct time in addition to certain privileges, some of which remain in effect.  These numerous and dangerous infractions indicate that Wilson has a pattern of recidivism and has not been fully rehabilitated.  In any event, Wilson has failed to demonstrate circumstances warranting a reduction in his term of imprisonment.  Thus, even if the court were to conclude that Wilson had been rehabilitated, this fact, without more, does not merit compassionate release.  U.S.S.G. § 1B1.13(d) (citing 28 U.S.C. § 994(t)).  While the court hopes that Wilson will continue on the path to rehabilitation, the court is of the opinion that neither Wilson's family circumstances, the length of his sentence, nor his rehabilitation efforts warrant his release at this time.

4.      Section 3553(a) Factors

The court further finds that compassionate release is not merited in light of the applicable factors set forth in 18 U.S.C. § 3553(a).  *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release); *United States v. Chavez*, No. 23-50684, 2024 WL 940263, at *1 (5th Cir. Mar. 5, 2024); *Rollins*, 53 F.4th at 358-59; *United States v. Shorter*, 850 F. App'x 327, 328 (5th Cir. 2021) (finding that the court did not abuse its discretion in denying compassionate release after balancing the § 3553(a) factors); *United States v. Keys*, 846 F. App'x 275, 276 (5th Cir. 2021); *Shkambi*, 993 F.3d at 392; *Thompson*, 984 F.3d at 435 n.11 (collecting cases); *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020).  Wilson's offense of conviction stems from his participation in a kidnapping, wherein Wilson and his co-defendants held the victim's wife and step-daughter at gunpoint, demanded money, and threatened to kill the victim.  After Wilson and his co-defendants left the premises with the victim, they made repeated calls to his wife demanding money and drugs, again threatening to kill the victim.  Wilson and his co-defendants warned the victim's wife not to call the police or they would kill her husband.  After working with the police, the victim's wife made arrangements for a drop off of money and the drugs she found in her home which Wilson and his co-defendants demanded.  After a separate chase ensued with Wilson's co-defendants, the victim was ultimately found tied up, but unharmed, in the back seat of a vehicle driven by Wilson.  Wilson was arrested and was found to be in possession of two loaded weapons and cocaine.  As a convicted felon, Wilson was prohibited from possessing a firearm.

In addition to the violent nature and frightening circumstances of his offense of conviction, Wilson's lengthy criminal history similarly demonstrates that he poses a danger to the community.

17

His criminal history, as an adult, includes prior convictions for aggravated assault, evading detention (3x), possession of stolen property, failure to identify, possession with intent to distribute cocaine base within 1,000 feet of a playground, escape, evading arrest with a vehicle, and possession of a controlled substance. Wilson also has a significant criminal history as a juvenile, which includes convictions for assault with bodily injury, burglary of a habitation, evading detention, unauthorized use of a motor vehicle (3x), felony theft (3x), evading arrest, burglary of a building, and burglary of a vehicle. Wilson was also charged with possession of marijuana, possession of a controlled substance (2x), aggravated assault, delivery of a controlled substance, and aggravated kidnaping, but these charges were dismissed as a result of the plea agreement in this case. At the time the PSR was prepared, Wilson had pending charges for theft, violation of curfew, and possession of marijuana. Probation also reports, as mentioned above, that Wilson has accumulated a substantial disciplinary record while incarcerated. Specifically, Wilson was recently disciplined for possessing a dangerous weapon in his cell. This is the third time he has been disciplined for possessing a dangerous weapon while in prison. In short, Wilson's "criminal history and conduct reflect an unabated propensity for crime." *United States v. Padilla*, No. H-14-174-1, 2021 WL 1517855, at *5 (S.D. Tex. Apr. 16, 2021).

The court further observes that Wilson has a long history of poly-substance abuse, including the frequent use of marijuana, alcohol, and codeine, which started with marijuana use at the age of 16. In fact, as reflected in his PSR, Wilson reported to Probation that he had a problem with "using and selling drugs." Courts are precluded from "lengthening a prison term in order to promote a criminal defendant's rehabilitation," but in the present case, the court is deciding whether to reduce, not extend, a sentence. *Tapia v. United States*, 564 U.S. 319, 321

18

(2011); *see Chambliss*, 948 F.3d at 694.  Furthermore, Wilson's disciplinary records reflect that he has demonstrated drug-seeking behavior and manipulation while incarcerated.  Therefore, releasing Wilson may facilitate his drug abuse, as he would gain unfettered access to alcohol, over-the-counter medications, and illegal drugs outside the BOP.

"Compassionate release is discretionary, not mandatory, and [may] be refused after weighing the sentencing factors of 18 U.S.C. § 3553(a)." *Chambliss*, 948 F.3d at 693; *see Rollins*, 53 F.4th at 358-60 (upholding the denial of compassionate release of the defendant, who suffered from a "dire" medical situation stemming from a gunshot wound that required the amputation of his right leg and left him paralyzed, and deferring to the district court's balancing of the § 3553(a) factors, including the defendant's "history, the serious nature of his offense, and the danger his release would pose to the community at-large"); *United States v. Gharib*, No. 21-40779, 2022 WL 1565352, at *1 (5th Cir. May 18, 2022).  Where, as here, a prisoner has engaged in "severe" criminal conduct and has an extensive criminal history, the district court has discretion to deny compassionate release under the circumstances.  *Chambliss*, 948 F.3d at 693-94; *accord Rollins*, 53 F.4th at 358-60; *Gharib*, 2022 WL 1565352, at *1 (refusing to consider the defendant's contention that extraordinary and compelling reasons justified compassionate release due to the defendant's no longer being subject to the career offender enhancement when the district court found that the § 3553(a) factors outweighed granting relief); *Keys*, 846 F. App'x at 276 (rejecting the Defendant's argument that the court gave too much weight to his criminal history and finding that "a mere disagreement with the court's balancing of the § 3553(a) factors . . . is not a sufficient ground for reversal").  In view of the nature and circumstances of Wilson's offense of conviction, his extensive criminal history, and his history

of substance abuse, the court cannot conclude that Wilson's early release from prison would afford adequate deterrence or protect the public, as he continues to pose a danger to other persons and to the community as a whole.  On balance, compassionate release is not warranted in light of the applicable factors set forth in § 3553(a).

As the court noted in *United States v. Preston*, "[t]he best predictor of how [Defendant] will behave if he were to be released is how he behaved in the past, and his track record is a poor one." No. 3:18-CR-307-K, 2020 WL 1819888, at *4 (N.D. Tex. Apr. 11, 2020) (quoting *United States v. Martin*, 447 F. Supp. 3d 399, 403 (D. Md. 2020)).  Here, Wilson's track record is abysmal.  In this instance, there is no reason to believe that Wilson would not revert to his prior violent behavior, his drug-dealing and drug-abusing activities, and his possession of firearms and other weapons if released from prison at this time.  *See United States v. Wymer*, 573 F. Supp. 3d 1208, 1212 (N.D. Ohio 2021).  In fact, the BOP has assessed him as posing a high risk for recidivism, and the record reflects he has repeatedly returned to criminal conduct despite prior terms of imprisonment.  The court concurs with Probation's recommendation that Wilson's motion for compassionate release be denied.  Like the court in *United States v. Lewis*, this court concludes that "Defendant's current term of imprisonment was and remains appropriate." No. 17-CR-28-FPG, 2021 WL 4519795, at *3 (W.D.N.Y. Oct. 4, 2021).  Wilson committed a serious offense that justified his sentence, and the circumstances he now identifies do not render that sentence unjust or inequitable.  *See id.*

III.    Conclusion

In sum, Wilson has failed to satisfy his burden of showing the necessary circumstances to warrant relief under the statutory framework to which the court must adhere.  The 240-month

sentence of imprisonment imposed upon Wilson for his offense comports with the 18 U.S.C. § 3553(a) factors, and he has adduced no extraordinary and compelling reasons to lessen his sentence or release him from prison at this juncture.  Neither his family circumstances, his efforts at rehabilitation, nor the length of his incarceration merits a reduction of sentence under these circumstances.

Accordingly, Wilson's *pro se* Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(C)(1)(A) and First Step Act (#202) is DENIED.

SIGNED at Beaumont, Texas, this 23rd day of September, 2024.

_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE